NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| BRIAN SAMPSON and MARIA SAMPSON, his wife, : : : : : Plaintiffs, : : Civil Action No. 11-1701 (ES) v. : : **OPINION** GLOCK, INC., et al., : : : Defendants. : : | |

**S**ALAS**, D**ISTRICT **J**UDGE

Pending before this Court is a product liability action brought by Plaintiff, a police officer of the Florham Park Police Department ("FPPD"), who was injured by a pistol designed and manufactured by Defendant Glock, Inc. ("Glock" or "Defendant"). Defendant now moves for summary judgment. (D.E. No. 60, Def. Glock, Inc.'s Mem. of Law in Supp. of its Mot. for Summ. Judgment. ("Def. Br.")). Defendant contends that because Plaintiff cannot identify any design defects or manufacturing defects which could cause the subject pistol to discharge absent a trigger pull, Plaintiff cannot sustain such an action as a matter of law. (*Id*. at 13). The instant motion is unopposed. The Court has considered the parties' submissions and decides the motion without oral argument pursuant to Fed. R. Civ. P. 78(b). Based on the reasons that follow, Defendant's motion for summary judgment is GRANTED.

1

I. **PROCEDURAL HISTORY**

On February 10, 2011, Plaintiff commenced this action in the Superior Court of New Jersey, Morris County. (D.E. No. 1, Def. Notice of Removal ¶ 1). On March 24, 2011, Defendant filed a Notice of Removal to this District. (*Id.* ¶ 7). Originally, Safariland, LLC and Streamlight, Inc. were also named as defendants, but Plaintiff's claims against Safariland, LLC and Streamlight, Inc. were dismissed with prejudice.[1] (D.E. No. 41, Stipulation of Dismissal With Prejudice as to Defs. Safariland, LLC and Streamlight, LLC ¶ 1). Subsequently, Glock moved to preclude the testimony of Plaintiff's Proposed Expert, and also moved for summary judgment on August 14, 2013. (D.E. Nos. 59, 60).[2] On August 19, 2013, Plaintiff requested an extension to file opposition to summary judgment motions. (D.E. No. 61). The Court granted Plaintiff's request on August 21, 2013. (D.E. No. 63). Despite receiving an extension, Plaintiff never filed an opposition to Defendant's instant motion. Subsequently, on January 9, 2014, the Court conducted a telephone conference to inquire as to the status of Plaintiff's summary judgment opposition. (D.E. No. 66). During that conference, Plaintiff's Counsel, Mr. Kobin, represented to the Court that he would submit an opposition. However, to date, Plaintiff has filed no opposition.

II. **FACTUAL BACKGROUND**

Plaintiff alleges that while at the FPPD headquarters on February 13, 2009, he placed the subject pistol, with a tactical light attached to its barrel, into a holster on his right thigh. (Def. 56.1

---

[1] Safariland, LLC and Streamlight, Inc. signed a stipulation of dismissal on January 28, 2013. (D.E. No. 41). As background, prior to the date of Plaintiff's injury, Safariland had issued a warning pertaining to its holster regarding the fact that "when a pistol is holstered with a tactical light attached, a large opening is created at the top of the holster which could allow access to the trigger of the pistol." (D.E. No. 60-2, Def. Glock, Inc.'s Separate Statement of Undisputed Material Facts in Supp. of its Motion for Summary Judgment ("Def. 56.1 Statement") ¶ 16). Following Plaintiff's injury, the Florham Park Police Department stopped using these holsters "because of concerns that a gap created between the holster and the pistol was large enough to allow a finger or a foreign object to enter the holster and pull the trigger." (*Id.* ¶ 33).

[2] The Court will not address Defendant's motion to preclude the expert testimony of Robert Hooker because it grants Defendant's motion for summary judgment notwithstanding any alleged insufficiency of Mr. Hooker's report.

Statement ¶ 19). While Plaintiff was walking down a hallway of FPPD headquarters with the holstered pistol attached to his right thigh, "a round of ammunition discharged from the subject pistol into [Plaintiff's] leg." (*Id.* ¶ 21). Following the incident, the pistol was inspected by the Morris County Sheriff's Office's Criminal Investigative Unit under the direction of Officer William Stitt, a Glock armorer. (*Id.* ¶ 22). Officer Stitt concluded that the pistol passed inspection. (*Id.* ¶ 24).

## III. DISCUSSION

### A. Legal Standard

A court shall grant summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). On a summary judgment motion, the moving party must show, first, that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the non-moving party to present evidence that a genuine issue of material fact compels a trial. *Id.* at 324. In so presenting, the non-moving party must offer specific facts that establish a genuine issue of material fact, not just "some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986). Thus, the non-moving party may not rest upon the mere allegations or denials in its pleadings. *See Celotex*, 477 U.S. at 324. Further, the non-moving party cannot rely on unsupported assertions, bare allegations, or speculation to defeat summary judgment. *See Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999). The Court must, however, consider all facts and their reasonable inferences in the light most favorable to the non-moving party. *See Pa. Coal Ass'n v. Babbitt*, 63 F.3d 231, 236 (3d Cir. 1995).

**B. Analysis**

Plaintiff alleges that Glock negligently designed the pistol at issue. (D.E. No. 1-1, Complaint ("Compl.") ¶ 2). Such design defect allegations are governed by the New Jersey Product Liability Act. The Act states:

> A manufacturer or seller of a product shall be liable in a product liability action only if the claimant proves by a preponderance of the evidence that the product causing the harm was not reasonably fit, suitable or safe for its intended purpose because it: [a] deviated from the design specifications, formulae, or performance standards of the manufacturer or from otherwise identical units manufactured to the same manufacturing specifications or formulae, or [b] failed to contain adequate warnings or instructions, or [c] was designed in a defective manner.

N.J.S.A. § 2A:58C-2.

Thus, in order to succeed under this theory, Plaintiff must prove that the pistol "was not reasonably fit, suitable or safe for its intended purpose." *Id*. In order to determine whether the design was defective and not reasonably fit, New Jersey courts apply a risk-utility analysis that considers seven factors:

> 1. The usefulness and desirability of the product-its utility to the user and to the public as a whole.
> 2. The safety aspects of the product-the likelihood that it will cause injury, and the probable seriousness of the injury.
> 3. The availability of a substitute product [that] would meet the need and not be as unsafe.
> 4. The manufacturer's ability to eliminate the unsafe character of the product without impairing its usefulness or making it too expensive to maintain its utility.
> 5. The user's ability to avoid danger by the exercise of care in the use of the product.
> 6. The user's anticipated awareness of the dangers inherent in the product and their avoidability, because of general public knowledge of the obvious condition of the product or of the existence of suitable warnings or instructions.
> 7. The feasibility, on the part of the manufacturer, of spreading the loss by setting the price of the product or carrying liability insurance.

4

*Johansen v. Makita U.S.A., Inc.,* 128 N.J. 86, 96 (1992).

To weigh the above factors and ultimately prove the existence of a defect, a plaintiff may rely on the testimony of an expert who has examined the product or offers an opinion on the product's design. *Scanlon v. General Motors Corp.*, 65 N.J. 582, 591 (1974). Plaintiff may also produce circumstantial evidence of a defect "such as proof of proper use, handling or operation of the product and the nature of the malfunction, [which] may be enough to satisfy the requirement that something is wrong with [the product]." *Lauder v. Teaneck Volunteer Ambulance Corps*, 368 N.J. Super. 320, 331 (App. Div. 2004). However, "where the issue concerns a product's design . . . . expert opinion is the only available method to establish defectiveness, at least where the design is not patently defective." *Huddell v. Levin*, 537 F.2d 726, 736 (3d Cir. 1976). New Jersey state courts require expert testimony when the alleged defect involves a complex instrumentality. *Id.* (citing *Rocco v. N.J. Transit Rail Operations*, 330 N.J. Super. 320, 341 (App. Div. 2000)).

Here, given the complex nature of the pistol, Plaintiff must rely on the testimony of an expert who has examined the subject pistol. Further, Plaintiff must show that the alleged defect caused the pistol to discharge without a trigger pull. *See Lewis v. American Cyanamid Co.*, 715 A.2d 967, 976 (N.J. 1998) (holding that causation is an element of a design defect claim); *Coffman v. Keene Corp.*, 628 A.2d 710, 716 (N.J. 1993) (holding that proximate cause must be shown in order to establish strict liability).

Accordingly, Plaintiff relies on the opinion of its proposed expert, Robert Hooker, in order to attempt to show that the pistol discharged without a trigger pull. At his deposition, Hooker stated that two separate safety mechanisms within the gun would have to fail simultaneously in

order for this to happen: the engagement[3] and the firing pin safety. (Def. Br. at 14 (citing Hooker Dep. at 188:15-24)). Hooker stated that the engagement was at 50%, rather than the 66% suggested by Glock in its Armorer's Manual.[4] (*Id*. at 25 (citing Hooker Dep. at 118:14-18)). However, Hooker "could not state to a reasonable degree of certainty why the engagement failed or what effect the alleged 50% engagement would have had with regard to a pistol discharging without a trigger pull." (*Id*. at 15).

Indeed, Hooker "admitted that he did not know why the engagement or firing pin safety allegedly failed . . . and could not state to a reasonable degree of certainty (1) that the firing pin safety failed or (2) whether the allegedly reduced engagement could have caused a discharge without a trigger pull." (*Id*. at 21 (citing Hooker Dep. at 198:17-200:8)). Further, Hooker "admitted that he is not a design expert and has no experience analyzing or drafting design drawings for firearms." (*Id*. (citing Hooker Dep. at 44:6-12, 103:5-11, 246:20-22)). Despite not knowing what could have conceivably caused the firing pin safety to allegedly fail, Hooker merely concludes that the fact that the pistol discharged is itself sufficient evidence that the firing pin safety failed. (*Id*. at 14 (citing Hooker Dep. at 199:1-25)).

Thus, Defendant argues that summary judgment is appropriate because "plaintiffs' own expert cannot identify the cause of the alleged spontaneous discharge." (*Id.* at 15). Defendant also notes that Plaintiff neither issued any discovery requests during fact discovery, nor conducted any depositions of party witnesses to substantiate any of its allegations that the pistol was defective. (*Id*. at 11). Defendant further highlights that "every person, with the exception of Hooker who

---

[3] "The term 'engagement' refers to the degree of surface contact between the raised back portion of the trigger bar and the firing pin lug." (Def. 56.1 Statement ¶ 25). Glock's recommendation of an engagement of 66% is a "flexible standard." (*Id.* ¶ 26).

[4] The Glock Armorer's Manual provides basic service and information for Certified Glock Armorers; those who are specially trained and certified to service Glock firearms. (Def. 56.1 Statement, Ex. E).

6

was present for the inspection of the subject pistol . . . concluded that the pistol was working properly and discharged because the trigger was pulled." (*Id*. at 16). Following the incident, the pistol was inspected by Officer William Stitt, a Glock armorer who regularly inspects Glock pistols, who concluded that the pistol was functioning properly and could not discharge without a trigger pull. (*Id*. at 7 (citing Stitt Dep. at 82:18-23, 87:2-89:18, 98:25-99:9)). Officer Stitt's inspection was observed by Lieutenant Matthew Gatzke, also a Glock armorer, who corroborated Stitt's conclusion. (*Id*. at 9 (citing Gatzke Dep. at 17:3-11, 52:6-19)). The pistol was inspected again in April 2012 by Emanuel Kapelsohn and Seth Bredbury, expert witnesses retained by Defendant, who concluded that the pistol's engagement surpassed the 66% recommendation. (*Id*. (citing Bredbury Dep. at 91:4-25; Kapelsohn Dep. at 249:9-250:1)).[5]

The Court agrees with Defendant. Plaintiff has presented no evidence that the discharge could have been caused by anything other than a trigger pull. A design defect claim is insufficient when the incident giving rise to the injury could have been caused for reasons unrelated to a design defect. *See Lauder v. Teaneck Volunteer Ambulance Corps.*, 845 A.2d 1271, 1277-78 (N.J. Super. Ct. App. Div. 2004) (explaining that the plaintiff, who was injured when a gurney collapsed, failed to exclude possible causes of the accident unrelated to design or manufacturing defect). Similarly, Plaintiff has not excluded the possibility that the pistol could have discharged for reasons unrelated to any defects. In fact, every pistol inspection except for Hooker's, led to the same conclusion: that the pistol would discharge *only* as a result of a trigger pull.

Moreover, summary judgment must be granted in favor of Defendant because Plaintiff has not identified an alternative design for the pistol which, if used, would have prevented injury. *See*

---

[5] These facts are also alleged in the Defendant's 56.1 Statement. Plaintiff failed to submit a responsive statement of facts, in clear violation of Rule 56.1. As such, the Court accepts Defendant's factual statements as uncontested, and accordingly admitted by Plaintiff, for purposes of this motion. *See Friedman v. Bank of Am., N.A.*, No. 09-2214, 2012 WL 1019220, at *6 n.2 (D.N.J. Mar. 26, 2012).

7

*Quincy Mut. Fire Ins. Co. v. Scripto USA*, 573 F. Supp. 2d 875, 879 (D.N.J. 2008) (holding that a Court cannot send a design defect case to a jury absent evidence that a feasible alternative design exists); *see also Diaz v. Glock, Inc.*, No. 08-5670 (D.N.J. May 30, 2012) (holding that a design defect claim regarding a Glock pistol must be dismissed on summary judgment when a reasonable alternative design is not identified). Because Plaintiff has not suggested any possible alternative design, he cannot proceed.

Hooker's contention that the pistol's discharge is itself evidence that the firing pin safety failed is hardly more than speculation or bare allegation that the pistol *may* be defective. The law, however, requires more of the non-moving party in a motion for summary judgment. *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.*, 172 F.3d 238, 252 (3d Cir. 1999) (citations omitted) ("Once the moving party points to evidence demonstrating no issue of material fact exists, the non-moving party has the duty to set forth specific facts showing that a genuine issue of material fact exists and that a reasonable factfinder could rule in its favor."). Further, "speculation and conclusory allegations do not satisfy this duty." *Id.*

Clearly, Plaintiff has failed to present or point to evidence supportive of claims on which he has the burden of proof. Because Plaintiff has not sufficiently identified defects with the pistol or excluded other possible reasons for discharge, he cannot establish proximate cause, a requisite element in a product liability claim. As such, a "complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 317. Thus, the Court grants summary judgment in favor of Defendant.

## IV. CONCLUSION

For the reasons mentioned above, the Court GRANTS Defendant's motion for summary judgment. An appropriate order shall accompany this opinion.

*/s/Esther Salas*
**Esther Salas, U.S.D.J.**